FILED
2018 Sep-25 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TONY WOOTEN,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Civil Action Number<br>)   **6:17-cv-00486-AKK**<br>)<br>)<br>)<br>)<br>)<br>) |

# **MEMORANDUM OPINION**

Tony Wooten brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, in particular because the ALJ relied in part on the erroneous finding of Dr. Nathan Strahl, the court finds that the ALJ's conclusion that alcohol abuse is a contributing factor material to the determination of disability is not supported by substantial evidence. Therefore, the court reverses and remands for further consideration.

## I. Procedural History

Wooten served for seventeen years in the Army National Guard. R. 100. During that time, he served as a platoon leader for thirteen months in Iraq and participated in numerous missions in the aftermath of Hurricane Katrina. R. 101-03, 114-15, 291. After leaving the armed services, Wooten worked as a truck driver and corrections officer before he stopped working in July 2013 at age 47 due to his alleged disability. R. 36, 321, 329. Wooten filed an application for a period of disability and disability insurance benefits ("DIB") on September 15, 2013, alleging that he suffered from a disability, beginning July 2, 2013 due to post traumatic stress disorder and pain in his back, neck, and knee. R. 11, 266, 319. After the SSA denied his application, Wooten requested a hearing before an ALJ. R. 142, 147, 151. The ALJ ultimately held three hearings—the initial hearing plus two supplemental hearings so that the ALJ would have the benefit of the testimony of a medical expert, a board-certified psychiatrist, who reviewed Wooten's records. R. 11, 31, 47, 71, 90.

The ALJ subsequently entered a decision finding that Wooten was not disabled. R. 8. The SSA Appeals Council denied Wooten's request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted his administrative remedies, Wooten timely filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the

ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

4

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that he is disabled, and, "consequently he is responsible for producing evidence in support of his claim." *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

The Act precludes an award of benefits when drug or alcohol abuse is a contributing factor material to the finding of disability. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1525. Thus, if a claimant is found disabled and medical evidence of substance abuse exists, the ALJ must determine whether the substance abuse is a contributing factor to the finding of disability. 20 C.F.R.

§ 404.1535(a). To do so, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if he stopped using drugs or alcohol and then decide whether any of those remaining limitations would be disabling. *Id.* at § 404.1535(b)(2).

### IV. The ALJ's Decision

In applying the five-step analysis, the ALJ first determined that Wooten met the insured status requirements of the Act through the date last insured, and that he had "not engaged in substantial gainful activity since July 2, 2013, the alleged onset date" of his disability. R. 13. The ALJ proceeded to Step Two, finding that Wooten had the severe impairments of "anxiety, post-traumatic stress disorder, alcohol abuse disorder, [and] cervical degenerative changes, status post anterior cervical discectomy and fusion at C4-5 and C5-6 . . . ." R. 14. The ALJ also found that Wooten suffered from non-severe knee and heart impairments. *Id.* At Step Three, the ALJ concluded that Wooten's "impairments, including the substance use disorder, meet sections 12.04, 12.06, and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d))." R. 15.

Because Wooten cannot be considered disabled if substance abuse is a "contributing factor material to the [ALJ's] determination that [Wooten] is disabled," 42 U.S.C. § 423(d)(2)(C), the ALJ did not find Wooten disabled at Step Three. Rather, in accordance with the SSA's regulations, the ALJ returned to Step

6

Two and found that Wooten would continue to have severe impairments if he stopped the substance use. R. 15. The ALJ then found that if Wooten "stopped the substance use, [he] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 16. Next, the ALJ determined Wooten's residual functional capacity ("RFC") if he stopped the substance use, stating that:

> [Wooten] would have the [RFC] to perform light work, . . . except he occasionally can lift and/or carry including upward pulling 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk with normal breaks . . . and sit with normal breaks for a total of six hours in an eight-hour workday. He occasionally can climb ramps and stairs but cannot work on ladders, ropes, or scaffolds. He occasionally can balance, stoop, kneel, crouch and crawl. He occasionally can reach overhead bilaterally. He should avoid concentrated exposure to extreme cold, extreme heat. He cannot work around hazardous machinery or unenclosed heights. He is limited to simple routine tasks. He can have occasional contact with co-workers, supervisors, and the general public.

R. 17.

Based on Wooten's RFC, and relying on the testimony of a VE, the ALJ found at Step Four that Wooten is unable to perform any past relevant work. R. 23. The ALJ then proceeded to Step Five, where, based on Wooten's RFC, age, prior work experience, and the VE's testimony, the ALJ concluded that if Wooten stopped the substance use, "a significant number of jobs exist in the national economy that he could perform," including hand packager, assembler, and garment folder. R. 24. As a result, the ALJ concluded that "[b]ecause the substance use

disorder is a contributing factor material to the determination of disability, [Wooten] has not been disabled within the meaning of the [] Act at any time from the alleged onset date through the date of [the ALJ's] decision." *Id.*

## V. Analysis

On appeal, Wooten argues that the ALJ erred by (1) rejecting the opinions of his treating physician, (2) failing to give weight to Wooten's disability rating from the Veterans Administration, and (3) failing to properly evaluate Wooten's credibility. Doc. 10 at 3, 29. A central issue running through Wooten's arguments is whether the ALJ erred by rejecting Wooten's testimony that he had stopped drinking alcohol. Thus, the court begins by addressing that issue before turning to Wooten's other arguments.

### A. Whether Substantial Evidence Supports the ALJ's Determination that Wooten's Alcohol Abuse Was Not in Remission

As discussed above, the ALJ found that, with alcohol dependence, Wooten's mental impairments meet listings 12.04, 12.06 and 12.09, which deal with affective disorders, anxiety related disorders, and substance addiction disorders. R. 15. But, the ALJ ultimately concluded that Wooten is not disabled within the meaning of the Act because Wooten's alcohol dependence is a contributing factor material to the finding of disability. R. 24. The ALJ's conclusion hinges on his determination that Wooten was still abusing alcohol in the summer of 2014 and at the time of the hearings and the ALJ's decision. *See* R. 15, 19.

Wooten's records reflect that he began drinking heavily after returning from Iraq in 2004. *See* R. 572, 681. Wooten went to the VA on October 23, 2013 for treatment of his alcohol abuse because, among other things, he was having "increased vigilance, irritability, isolating, poor crowd tolerance, nightmares, and depression." R. 572. The VA admitted Wooten to an in-patient treatment program, where he remained until December 10, 2013. R. 572, 600, 637. The VA treatment records reflect that Wooten benefitted from the program and state that "Wooten maintained sobriety throughout his duration in the treatment program" and "met his goal of abstaining from alcohol." R. 638, 641, 653, 661. At the administrative hearings in this matter, Wooten testified that he stopped drinking when he entered the VA treatment program. R. 96-97, 104.[1] The ALJ rejected Wooten's testimony on that point and found that Wooten continued to abuse alcohol.

In reaching that decision, the ALJ gave substantial weight to the opinion of the medical expert, Dr. Strahl, who testified at the third hearing that Wooten's mental impairments are made worse by ongoing alcohol abuse. R. 15-16. Specifically, Dr. Strahl testified that Wooten's VA records contain "clear evidence" that Wooten was still drinking alcohol in June 2014. R. 49. Among

---

[1] Wooten reported to Dr. Alan Blotcky that he stopped drinking in January 2014, the date that he claimed the VA treatment program ended. R. 1004. Dr. Strahl, the medical expert who testified at Wooten's hearings, expressed no concern about this discrepancy regarding when Wooten stopped drinking, R. 48-49.

9

other things, Dr. Strahl contends that the VA records from March – December 2014 state that Wooten should "set a date to quit drinking ideally within two weeks." R. 53. But, the records contain no such statement related to alcohol. Rather, the statements in question, counseling Wooten to "[s]et a quit date, ideally within 2 weeks," refer to Wooten's use of tobacco products. R. 1098, 1111. It is unclear how and to what extent Dr. Strahl's incorrect interpretation of the VA records colored his opinion about whether Wooten's alcohol abuse was in remission.

Moreover, a review of the VA treatment records also questions Dr. Strahl's opinion that Wooten was still drinking in the summer of 2014. As Dr. Strahl points out, the records contain statements dated June 9 and September 9, 2014 that Wooten has "cut back on the alcohol a lot." R. 54; *see also* R. 1099, 1102. Dr. Strahl notes that cutting back on alcohol is not necessarily the same as quitting. R. 54. Although this is indeed generally the case, it is not a clear admission here that Wooten was still drinking because Wooten's September 9, 2014 treatment notes do not list alcohol dependence or alcohol abuse as active problems. R. 1099.

In addition to relying on Dr. Strahl, there are other contentions that cause the court to question whether substantial evidence supports the ALJ's determination. First, as the ALJ noted, Wooten's June 9, 2014 treatment notes include alcohol dependence (diagnosed on August 21, 2013) and alcohol abuse (diagnosed on

10

December 12, 2006) in a list of almost forty active problems. R. 1103; *see also* R. 18. However, the June treatment notes do not identify alcohol abuse or dependence as a current diagnosis, but rather identify Wooten's only diagnosis as PTSD. R. 1103, 1105.[2] In addition, the list of Wooten's active problems from June 2014 also includes a diagnosis of indigestion from 2013 and a diagnosis of chest pain from 2004. R. 1103. Therefore, it is not clear if the June 2014 list of active problems was current.

Second, the ALJ also notes that Wooten's June 9, 2014 treatment records show that Sondra Wilder, a nurse practitioner, recommended that Wooten "slowly taper alcohol as discussed." R. 18. Indeed, the VA treatment notes from Wooten's appointments with Ms. Wilder on December 30, 2013; March 10, 2014; June 9, 2014; September 9, 2014; and December 10, 2014 contain a section titled education that includes the recommendation to "slowly taper alcohol as discussed" along with four other recommendations. R. 644, 1095, 1100, 1105, 1109. However, treatment notes from those dates also reflect that Wooten denied alcohol use, and, as noted above, the VA removed alcohol dependence and alcohol use from Wooten's diagnoses and list of active problems during that time period. *See*

---

[2] VA treatment notes dated December 30, 2014 included both PTSD and alcohol abuse as Wooten's diagnoses. R. 644.

R. 1094-95, 1099-1100, 1107. The ALJ does not discuss those aspects of the records in his decision or explain why he found them less credible.

Finally, in reaching his decision that alcohol abuse is a contributing factor to Wooten's disability, the ALJ states that "[w]ith regard to alcohol abuse, . . . the last evidence from the Veterans Administration is dated more than a year before the hearing, and this indicated that [Wooten] was drinking but functioned better when he did not drink." R. 19. However, the most recent treatment notes in the record from the VA are dated December 10, 2014 (just one month before the second hearing and five months before the third hearing before the ALJ), and those notes make no mention of Wooten drinking. *See* R. 1094-95. Rather, the notes explicitly state that Wooten denied alcohol use, and alcohol abuse is not identified as one of Wooten's diagnoses or active problems. *Id.* Once again, however, the ALJ did not discuss those VA records in his decision.

As the record currently stands, it seems the ALJ focused only on the evidence that supports his decision that Wooten's alcohol abuse was not in remission and ignored entries that support Wooten's testimony that he had stopped drinking. When the ALJ "focus[es] upon one aspect of the evidence and ignore[s] other parts of the record . . . , [the court] cannot properly find that the administrative decision is supported by substantial evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). On remand, the ALJ should reconsider the

medical evidence regarding Wooten's alcohol abuse and consult with Dr. Strahl, or another medical expert, as necessary, to determine if indeed Wooten was still abusing alcohol and if Wooten's alcohol abuse was a contributing factor material to the determination of disability.

B. Whether the ALJ Erred by Giving Little Weight to the Opinions of Wooten's Treating Physician

Wooten argues that the ALJ failed to properly weigh the opinions of his treating physician, Dr. S. Keith Morrow. Doc. 10 at 31-39. The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). The ALJ must clearly articulate the reasons for not giving substantial or considerable weight to a treating physician's opinions. *Id.*

In particular, Wooten contends that the ALJ should have given more weight to opinions contained in a February 24, 2014 letter from Dr. Morrow. *See* doc. 10 at 33. In the letter, Dr. Morrow states that "Wooten has multiple medical problems

13

that now preclude him from being able to return to work." R. 995. He further opined that Wooten's medical problems "have greatly impacted [his] quality of life" and that "Wooten [] has episodes of severe insomnia, agitation and difficulty focusing." *Id.* The ALJ considered those opinions, but gave them little to no weight. R. 19-20.

As an initial matter, Dr. Morrow's opinion that Wooten is precluded from returning to work is not a medical opinion, but is instead a legal issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coheley v. Soc. Sec. Admin.*, 707 Fed. Appx. 656, 659 (11th Cir. 2017); *Hutchison v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that an opinion regarding whether a claimant "could hold a job is a vocational opinion, not a medical one" and is a "question reserved to the ALJ"). As such, the opinion is not entitled to any weight, *see* 20 C.F.R. § 404.1527(d)(3), and the ALJ did not err by giving it no weight.

With respect to the remaining opinions expressed by Dr. Morrow, the ALJ gave those opinions little weight in part because Dr. Morrow failed to provide medical evidence to support his assessment. R. 20. While that is true as to the letter Dr. Morrow provided, Wooten's medical record is replete with records that support Dr. Morrow's assessment, including Dr. Morrow's own diagnoses of Wooten with PTSD, anxiety, and depression. R. 406, 420, 998, 1000-02, 1122, 1124-25, 1129. In any event, ultimately, it seems the ALJ gave little weight to Dr.

14

Morrow's opinions because Dr. Morrow "did not consider the impact of alcohol on [Wooten's] ability to function." R. 20. Indeed, nowhere in Dr. Morrow's opinion does he address the impact, if any, of Wooten's alcohol abuse on Wooten's medical conditions. In that regard, good cause exists for the ALJ to disregard the opinion. However, because the ALJ's finding that Wooten's alcohol abuse was not in remission is not supported by substantial evidence, *see* pp. 8-13, *supra*, on remand, if the ALJ determines that Wooten's alcohol abuse is in remission, then the ALJ should revisit and re-weigh the opinions in Dr. Morrow's February 24, 2014 letter.

C. Whether the ALJ Erred by Giving No Weight to Wooten's Disability Determination from the VA

Wooten contends that the ALJ committed reversible error by failing to give great weight to his disability determination from the VA. Doc. 10 at 39-42. Under SSA regulations, a disability determination by another federal agency is not binding on the SSA. 20 C.F.R. § 404.1504. Nevertheless, in this Circuit, "'although the VA's disability rating is not binding on the SSA, it is evidence that should be given great weight.'" *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 Fed. Appx. 902, 904 (11th Cir. 2016) (quoting *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984)) (alteration in original omitted). That is not to say that an ALJ cannot discount a disability determination from the VA; instead, "the ALJ must seriously consider and closely scrutinize the VA's disability determination

and must give specific reasons if the ALJ discounts that determination." *Id.* (citing *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)).

Here, the VA issued a rating decision giving Wooten a seventy percent disability rating effective January 1, 2014 due to Wooten's PTSD. R. 279-81.[3] The ALJ recognized the VA's disability rating, but did not assign it weight because "a review of the determination show this rating is based entirely upon the subjective statements of [Wooten] to the VA, and the VA ratings did not include the effects of alcohol abuse as contributing factors to the disability . . . ." R. 19. As an initial matter, the ALJ erred by stating that the rating is based entirely upon Wooten's subjective statements. Instead, the rating identifies eleven different items that support the decision, including a review of Wooten's VA medical records and a March 10, 2014 examination by a VA psychologist. R. 279-80. However, the ALJ is correct that the VA did not consider whether alcohol abuse is a contributing factor to the finding of disability, which the SSA regulations require the ALJ to consider. *See* R. 19. That particular discrepancy between the VA determination and the SSA regulations provides good cause to discount the VA's disability determination. Still, as discussed above, the ALJ's finding that Wooten's alcohol abuse was not in remission is not supported by substantial

---

[3] The VA gave Wooten a temporary disability rating of one-hundred percent effective October 23, 2013-December 31, 2013 based on his in-patient stay in the VA treatment program. R. 279-80.

evidence. Thus, on remand, if the ALJ determines that Wooten's alcohol abuse was in remission, then the ALJ must revisit his assessment of the VA's disability determination.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's finding that Wooten's active alcohol abuse was a contributing factor material to the determination of disability is not supported by substantial evidence. Accordingly, the court **REVERSES** the ALJ's decision denying benefits and **REMANDS** for further consideration consistent with this Memorandum Opinion. Specifically, the ALJ should revisit his finding related to Wooten's current alcohol use and the extent it is based on Dr. Strahl's erroneous interpretation of the VA records. If, on remand, the ALJ finds that Wooten's alcohol abuse was in remission, then the ALJ must revisit his assessments of Dr. Morrow's February 24, 2014 opinions and the VA's disability determination.

**DONE** the 25th day of September, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE